# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) No. 07 C 4480 ) ) Judge Ruben Castillo |
| v. | ) ) |
| FAITH SCHULMAN, RITA SCHULMAN, and STEVEN LEVIN, | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Metropolitan Life Insurance Company ("MetLife") filed this interpleader action against Faith Schulman ("Faith"), Rita Schulman ("Rita"), and Steven Levin ("Levin") pursuant to 28 U.S.C. § 1335(a)(1) ("Section 1335"). (R. 1, Compl.) Presently before the Court is Rita's motion for summary judgment on competing claims to insurance policy proceeds currently being held by the Registry of the United States District Court for the Northern District of Illinois. (R. 50, Rita's Mot.) For the reasons stated below, the motion is granted.

## RELEVANT FACTS[1]

---

[1] Local Rule 56.1 requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1(a)(3). This statement must "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Id. In this case, Rita has failed to submit a Local Rule 56.1 statement with her motion for summary judgment. While ordinarily this inexcusable omission could have had dire consequences, Levin's outright failure to respond to her motion for summary judgment diminishes the magnitude of this oversight. The Court reminds litigants that adherence to the Local Rules is critical. See Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 527 (7th Cir. 2000) ("[W]e have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.").

Goldie Schulman ("Goldie"), Rita's mother, died in February 2007 at the age of 89. (R. 50, Rita's Mot. 50, Schulman Aff. ¶ 3; R. 51, Rita's Mot., Ex. D.) Prior to her death, Goldie purchased two insurance policies–No. 863203280A and No. 832702053A (the "policies")–with MetLife. (*See* R. 51, Rita's Mot., Ex. B.)

Goldie met Levin in 2000. (R. 50, Rita's Mot., Schulman Aff. ¶ 3.) Over the following years, Goldie placed her trust and confidence in Levin with respect to financial matters. (*Id.* ¶ 5.) In August 2004, Goldie executed a Change of Beneficiary Form which named Levin as the beneficiary of the policies. (*See* R. 51, Rita's Mot., Ex. B.) On July 12, 2006, Goldie signed a Change of Ownership form in which she assigned ownership of the policies to Levin. (*Id.*, Ex. C.)

After Goldie's death, Levin submitted an Individual Life Death Claim Form. (*Id.*, Ex. E.) In this form, Levin sought the full and immediate payment of the policy proceeds (alternatively, "interpleaded fund"). (*Id.*) On March 28, 2007, Rita filed a protest with MetLife challenging the payment of the proceeds to Levin. (R. 51, Schulman Protest.)

Approximately two weeks later, Levin sent a fax to what can reasonably be assumed to be a MetLife representative. (*See* R. 51, Levin Fax.) In his fax, Levin states that "Goldie changed me . . . to her beneficiary to carry out her final wishes, bury her, etc. and to care for Rita." (*Id.*) Later in the document, he demanded "payment on the life policies to cover the burial and final expenses for Goldie Schulman." (*Id.*)

On August 8, 2007, MetLife filed an interpleader complaint. (R. 1, Compl.) Two months later, MetLife moved for a final decree of interpleader. (R. 9, MetLife Mot.) The Court entered a final decree of interpleader on August 19, 2008. (R. 40, Final Decree.) Rita filed a claim to the

2

interpleaded funds on August 8, 2008. (R. 37, Schulman claim.) Levin filed a competing claim two days later. (R. 38, Levin claim.)

The Court subsequently set a schedule for potentially dispositive summary judgment motions. (R. 49, Min. Order.) Rita filed a timely motion for summary judgment on April 28, 2010. (R. 50, Rita's Mot.) Levin was given until May 14, 2010 to respond to Rita's motion and to file a cross motion for summary judgment; he has yet to present a submission to the Court.[2]

## LEGAL STANDARD

An action commenced under Section 1335 generally involves two steps: first, the district court determines whether the requirements of the statute have been met and whether the plaintiff may be relieved of liability; second, it adjudicates the defendants' adverse claims to the interpleaded fund. *E.g.*, *NYLife Distribs., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 375 (3d Cir. 1995); 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1714, at 624-31 (3d 2001) (hereinafter Wright, Miller & Kane). The second stage, "which proceeds like any other action, is ultimately resolved by the entry of a judgment in favor of the claimant who is lawfully entitled to the stake." *NYLife Distribs., Inc.*, 72 F.3d at 375. In short, after a court has determined that interpleader is warranted, the claimants proceed to a second stage in which the merits of their claims are resolved. *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008). Conflicting claims to the interpleaded fund can be adjudicated at the summary judgment stage. Wright, Miller & Kane § 1715, at 632.

Summary judgment is appropriate when the record, viewed in the light most favorable to

---

[2] Faith has not filed a claim to the interpleaded funds. The Court will therefore not consider her in its analysis.

3

the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007). In ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences and resolving all doubts in the nonmoving party's favor. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once a moving party has met this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." *Wheeler*, 539 F.3d at 634.

Where a nonmoving party fails to file a timely response to a motion for summary judgment, "the district court must still review the uncontroverted facts and make a finding that summary judgment is appropriate as a matter of law." *Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996) (citations omitted). A failure to respond to a motion for summary judgment is merely an admission that no material issues of fact exist. *See Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993). Here, since Levin has failed to respond to Rita's motion for summary judgment, the Court relies upon the uncontroverted facts that find support in the record in determining

4

whether summary judgment is appropriate as a matter of law.[3]

## ANALYSIS

Rita maintains that she is entitled to summary judgment because Goldie did not intend to give Levin a beneficial interest in the policy proceeds when she transferred ownership to him. (R. 50, Rita's Mot. at 8-9.) Rather, she argues that Goldie's intent in transferring these policies to Levin was "to benefit Rita while safeguarding Rita from problems she might be vulnerable to if the funds went to Rita directly." (*Id.*) Accordingly, she concludes that a resulting trust was created and that she is entitled to the policy proceeds. (*Id.*)

A resulting trust is an "intent enforcing" trust, and arises by operation of law and the presumed intent of the parties. *In re Estate of Koch*, 697 N.E.2d 931, 933 (Ill. App. Ct. 1998). "A resulting trust [arises] wherever the circumstances surrounding the disposition of property raise an inference, not rebutted, that the transferor does not intend that the person taking or holding the property . . . should have the beneficial interest therein." *Kaibab Indus., Inc. v. Family Ready Homes, Inc.*, 444 N.E.2d 1119, 1126 (Ill. App. Ct. 1983) (quoting *Steiner v. Lawson*, 219 N.E.2d 121, 127 (Ill. App. Ct. 1966)). It is well-established that the "burden of proof rests upon the party seeking to establish a resulting trust, and the evidence to be effective for this purpose must be clear, convincing, unequivocal, and unmistakable." *Id.* The crucial element in creating a resulting trust is intent, and that such intent can be proved by surrounding circumstances, but such proof must be clear and convincing. *Id.*

Here, the circumstances surrounding the disposition of change of ownership of the

---

[3] The Court notes that the numerous factual statements in Rita's memorandum that are not supported by evidence in the record will be ignored.

5

policies raise an inference that Goldie did not intend for Levin to have the beneficial interest in the policy proceeds. Specifically, the Court finds that Rita has established that it was not Goldie's intent that the insurance proceeds benefit Levin. Indeed, the uncontroverted evidence in the record indicates that Levin has previously acknowledged that Goldie placed him as a beneficiary on the policies so that he could "carry out her final wishes, bury her, etc. and . . . care for Rita." (R. 51, Levin Fax.) In the absence of any evidence to the contrary, the Court finds that Rita has carried her burden of demonstrating that it was Goldie's intent that the policy proceeds be used to her benefit. Given their adverse positions in this litigation, the Court will not name Levin as trustee. Instead, the Court will order the release of the interpleaded funds directly to Rita.

As a final matter, the Court notes that Levin's failure to respond to Rita's motion for summary judgment has severely impaired the Court's ability to resolve this case. This failure has left the Court with having to resolve this action without an appropriate adversarial presentation. In the end, however, the Court finds that Rita has presented enough evidence to succeed with her claim to the interpleaded funds.

## CONCLUSION

For the reasons stated above, Rita's motion for summary judgment (R. 50) is GRANTED. The Registry of the United States District Court for the Northern District of Illinois is ordered to pay Rita Schulman $7,294.87, which represents MetLife's full and total liability for the policy benefits, plus applicable interest.

Entered: *[signature]*

Judge Ruben Castillo
United States District Court

**Dated:** August 3, 2010